**[J-36A-C-2024] [OAJC: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 98 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 811 MDA |
| | : | 2021 entered on April 28, 2023, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Northumberland County Court |
| | : | of Common Pleas, Criminal Division, |
| JOHN EDWARD KURTZ, | : | at No. CP-49-CR-0000045-2018 |
| | : | entered on March 2, 2021 |
| Appellant | : | |
| | : | ARGUED: May 14, 2024 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 99 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 421 MDA |
| | : | 2023 entered on April 28, 2023, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Northumberland County Court |
| | : | of Common Pleas, Criminal Division, |
| JOHN EDWARD KURTZ, | : | at No. CP-49-CR-0001236-2018 |
| | : | entered on March 2, 2021 |
| Appellant | : | |
| | : | ARGUED: May 14, 2024 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 100 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 429 MDA |
| | : | 2023 entered on April 28, 2023, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Northumberland County Court |
| | : | of Common Pleas, Criminal Division, |
| JOHN EDWARD KURTZ, | : | at No. CP-49-CR-0001479-2018 |
| | : | entered on March 2, 2021 |
| Appellant | : | |
| | : | ARGUED: May 14, 2024 |

**CHIEF JUSTICE TODD**                                    **DECIDED:  December 16, 2025**

I respectfully concur in the result reached by the Opinion Announcing the Judgment of the Court ("OAJC").  We granted allocatur as to two issues: (1) whether, under Article I, Section 8 of the Pennsylvania Constitution, an individual has a reasonable expectation of privacy in his or her private internet search queries and IP address[1], so as to require law enforcement to obtain a warrant before seeking such information and (2) whether probable cause was shown to support the issuance of a warrant upon Google, Inc. ("Google") for search histories, where no suspect was identified and no direct evidence existed that demonstrated that Google searches were used in the planning or commission of the crime.  I conclude that we need not address the first question raised in this appeal, as the General Assembly appears to have statutorily mandated a warrant in these circumstances and the Pennsylvania State Police ("PSP") sought and obtained a warrant.  Addressing this second issue, I would find that there was sufficient evidence of probable cause to support the issuance of the warrant in this matter.  That being the case, I would affirm the order of the Superior Court on this basis, and not reach the novel constitutional question addressed by the OAJC.

The OAJC has adequately set forth the facts underlying this appeal.  Thus, I turn to the arguments of the parties regarding the warrant issue, which the lead opinion does not reach.  Appellant maintains that the PSP did not establish probable cause to support the Google warrant because the affidavit in the warrant application was merely speculative and not supported by any facts or circumstances that would have caused "an

---

[1] An internet protocol ("IP") address is assigned by an internet service provider to an individual address, such as a residence, that facilitates the transfer of data across the internet.  N.T., 5/22/18, at 6-8.

individual of reasonable caution" to believe Google was involved in any way in the commission of the crimes. Appellant's Brief at 35 (referencing *Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2021)). According to Appellant, the speculative beliefs of the PSP do not establish probable cause because there were no articulable facts, reliable information, or reasonable inquiries related to or suggesting the use of Google by the perpetrator of the crimes. Appellant avers that, to establish probable cause, police must demonstrate facts showing that a particular person committed a particular crime and that evidence of that crime would be found in a particular place, citing *Commonwealth v. Jacoby*, 170 A.3d 1065 (Pa. 2017). Appellant contends that the affidavit set forth only general assumptions and beliefs that Google was used in the commission of the crimes, including the remoteness of the victim's home, the absence of her husband, the fantasy-driven nature of sexual offenders, and the pervasive availability of the Google search engine. Yet, Appellant submits that these factors could have easily related to something other than the use of the Google search engine. In Appellant's view, the PSP had no suspect, no leads, and no evidence to assist them in solving the crime, and so it took a "shot in the dark" and obtained a dragnet warrant for the content of Google searches involving the victim and her address, without establishing probable cause. Appellant's Brief at 43. As a result, Appellant urges the suppression of all evidence obtained from the Google warrant and subsequently obtained evidence as the fruit of the poisonous tree.[2]

---

[2] *Amici* Electronic Frontier Foundation, National Association of Criminal Defense Lawyers, and Pennsylvania Association of Criminal Defense Lawyers, in support of Appellant, submit that keyword warrants are the same as general warrants, used by the British prior to the Revolution, and which the federal and Pennsylvania Constitutions were drafted to preclude. Specifically, *Amici* offer that a keyword warrant is akin to a warrant that authorizes police to search every house in an area of a town, on the chance that they might find written material connected to a crime. Here, no suspects or accounts were named; rather, on what they characterize as a hunch, police sought information on all (continued…)

The Commonwealth counters that, even though the suspect was unknown and there was no direct evidence that Google was used in the commission of the crime, nevertheless, the Google warrant was supported by probable cause. The Commonwealth points out that probable cause is a practical, common-sense assessment about whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. According to the Commonwealth, the circumstances set forth in the affidavit of probable cause demonstrated a fair probability that Google was used and that evidence would be found in its archives. Specifically, the Commonwealth proffers that the victim was attacked in her home, which is in a secluded area; the victim was transported to another location by vehicle; and, after being raped, the victim was dropped off in another secluded area 0.7 miles from her residence. Thus, the Commonwealth submits that, based upon the circumstances of the crime, the nature of the crime, and the course of the investigation, it was reasonable to conclude that the

accounts associated with devices that might have searched for phrases potentially linking the individual to a crime.

Stated another way, *Amici* contend keyword warrants are a dragnet, sweeping in any and all innocent people who happen to have searched for information related to the specific keywords. As a result, *Amici* argue that the warrant was insufficiently particularized and lacked probable cause as it was based upon an officer's mere belief that the suspect knew the victim and that her residence was not randomly targeted. *Amici* submit that it was equally or more likely that the perpetrator knew the victim and would not have needed to use a search engine to locate her house. Even if the affidavit demonstrated a "fair probability" that the warrant would uncover the identity of the attacker, according to *Amici*, this is insufficient to support a search of an unknown number of users and their search inquiries, and they claim that warrants must demonstrate particularized probable cause as to every user.

*Amici* American Civil Liberties Union, ACLU of Pennsylvania, Library Freedom Project, Association of Research Libraries, Freedom to Read Foundation, and Internet Archive, likewise in support of Appellant, explain that, instead of seeking information about an identified suspect, a "reverse search" seeks to identify suspects by demanding a company comb through its repository of the public's interactions with its services, trapping countless innocent people in its net. *See also supra* note 2.

suspect utilized the internet to research the victim and her residence prior to the incident to facilitate the planning and commission of the crime, and so there was a fair probability that Google would have evidence of the crime. The Commonwealth stresses the frequently utilized practice of internet searches, and that utilizing Google is so common it is recognized as a verb.[3]

The Fourth Amendment to the United States Constitution[4] and Article I, Section 8 of the Pennsylvania Constitution[5] protect individuals from unreasonable searches and

---

[3] *Amici* Office of the Attorney General of Pennsylvania and the Pennsylvania District Attorney's Association, in support of the Commonwealth, challenge Appellant's assertion that the PSP had no suspect, leads, or evidence, and merely took a "shot in the dark" to obtain information. *Amici*'s Brief at 3. Rather, according to *Amici*, the issuing authority relied upon facts, police experience, and the realities of the modern world — that it is impossible to participate in society without using internet search technology. In support thereof, *Amici* proffer reasons supporting probable cause for the issuance of the Google warrant in addition to those offered by the Commonwealth: the remote location of the victim's residence suggesting she was not randomly targeted; the timing and remoteness suggesting that the assailant was familiar with the victim and her residence; police experience (a well-recognized factor in probable cause analysis) that such sexual offenders are predominantly fantasy driven; that the suspect may have been stalking the victim; and that the victim was attacked when her husband was at work, suggesting research of her and her husband's schedules. Based upon these factors, *Amici* claim that the inference the suspect used Google was reasonable and not a guess. Related thereto, *Amici* stress that, not only was it highly likely a rapist would research his victim, but it logically followed that he would use Google, the most popular search engine, accounting for 92% of the worldwide market and 89% in the United States. *Amici*'s Brief at 18. Finally, *Amici* emphasize that the warrant was not overly broad, as it was limited to a seven-day period before the rape and was restricted to searches of the victim's name and address.

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[5] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. art. I, § 8.

seizures by the government through, with certain exceptions, the requirement of a judicially-issued warrant.[6]  Our Rules of Criminal Procedure set forth the same requirements.[7]  The "linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds,* 586 A.2d 887, 899 (Pa. 1991) (quoting *Commonwealth v. Miller,* 518 A.2d 1187, 1191 (Pa. 1986)); Pa.R.Crim.P. 203(B) (setting forth that no search warrant shall issue but upon probable cause).[8]  The requirement of a search warrant supported by

---

[6] While neither Appellant John Kurtz nor the Commonwealth discuss a *statutory* warrant requirement for the search of electronic information, *Amici* Office of the Attorney General of Pennsylvania and the Pennsylvania District Attorney's Association point to Section 5743 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5743, which mandates a warrant in order to access electronic information.  *Amici*'s Brief at 10-11, 11 n.1.  Specifically, Section 5743, entitled, "Requirements for governmental access," provides in relevant part:

> (a) Contents of communications in electronic storage.-- Investigative or law enforcement officers may require the disclosure by a provider of communication service of the contents of a communication which is in electronic storage in a communication system for:
>
> > (1) One hundred eighty days or less only pursuant to a warrant issued under the Pennsylvania Rules of Criminal Procedure.

18 Pa.C.S. § 5743.  While I believe it unnecessary to definitively resolve the applicability of the Wiretapping and Electronic Surveillance Control Act's warrant requirement in this appeal, it is undisputed that the PSP sought and obtained a warrant.

[7] *See* Pa.R.Crim.P. 201 ("A search warrant may be issued to search for and seize: (a) contraband, the fruits of a crime, or things otherwise criminally possessed; (b) property that is or has been used as the means of committing a criminal offense; (c) property that constitutes evidence of the commission of a criminal offense; or (d) a person for whom a bench or arrest warrant has been issued.").

[8] As to our standard of review, in keeping with the Fourth Amendment's strong preference for warrants, "courts should not invalidate . . . warrants by interpreting affidavits in a hyper[-]technical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also Commonwealth v. Torres*, 764 A.2d 532, 537 (Pa. 2001).  Rather, it is the duty of a court reviewing an issuing authority's probable cause determination to (continued…)

probable cause is not imposed for the protection of criminals or to make the home a safe haven for illegal activities. Rather, the law places a neutral issuing authority between police and citizens so that an objective mind may weigh the need to invade a person's privacy in order to enforce the law. *McDonald v. United States*, 335 U.S. 451, 455 (1948); *Riley v. California*, 573 U.S. 373, 382 (2014) ("Such a warrant ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime'").

While the federal and Pennsylvania charters expressly require probable cause for the issuance of a warrant, the concept is not capable of easy, objective, or strictly precedential application. Indeed, probable cause has been described as "a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232; *United States v. Davis*, 458 F.2d 819, 821 (D.C. Cir. 1972) ("Because of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next.' . . . It is however the totality of these facts and circumstances which is the relevant consideration. . . . Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit." (citations omitted)).

Consistent with the fluid nature of probable cause, the standard for evaluating whether probable cause exists for the issuance of a search warrant is the "totality of circumstances" test as set forth in *Gates, supra*, and adopted by this Court in *Commonwealth v. Gray,* 503 A.2d 921, 926 (Pa. 1985). *See also Davis*, 458 F.2d at 821

---

ensure that the tribunal had a substantial basis for concluding that probable cause existed. *Commonwealth v. Pacheco*, 263 A.3d 626, 646 (Pa. 2021). An "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," *Illinois v. Gates*, 462 U.S. at 236, as an issuing authority's probable cause determination is entitled to deference. *Id.*; *Pacheco*, 263 A.3d at 646. The scope of review of a probable cause determination is limited to the four corners of the supporting affidavit. Pa.R.Crim.P. 203(B).

(explaining that probable cause is "a plastic concept whose existence depends on the facts and circumstances of the particular case" (citation omitted)). Before a neutral authority may issue a constitutionally valid search warrant, the burden is upon the Commonwealth to furnish the issuing authority with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. *Commonwealth v. Davis,* 351 A.2d 642, 645 (Pa. 1976). In turn, probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that a search should be conducted. *Commonwealth v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991). That is to say, the information proffered by the affiant must be examined by the issuing authority to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quoting *Commonwealth v. Baker*, 518 A.2d 802, 803 (Pa. 1986)). Moreover, under a "four corners" mandate, probable cause must be based on the facts described within the four corners of the supporting affidavit. Pa.R.Crim.P. 203(B) (requiring that probable cause must be "supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."). The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. *Commonwealth v. Edwards,* 426 A.2d 550, 554 (Pa. 1981). Related thereto, probable cause is grounded in the finding of the probability, not a *prima facie* showing, of criminal activity. *Commonwealth v. Baker*, 615 A.2d 23, 25 (Pa. 1992).

In determining whether a warrant should issue, the United States Supreme Court and our Court have made clear that our respective Constitutions do not allow warrants to

be used as a general investigative tool for searching or seizing a citizen's private property, papers, or effects in the conduct of a criminal investigation. Rather, usually, probable cause issues when a specific individual or specific items sought by the warrant have a connection to the crime under investigation. *See Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 301 (1967); *Commonwealth v. Butler*, 291 A.2d 89, 90 (Pa. 1972).

However, a search warrant may be used as an investigative tool under appropriate circumstances. *See Hayden*, 387 U.S. at 306 ("[I]t is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals."); *Commonwealth v. Jones*, 988 A.2d 649, 657 (Pa. 2010) (explaining that a search warrant may be issued to search for property that may constitute mere evidence concerning a crime that has been committed and rejecting the claim that a warrant can never be used as an investigative tool, including where the identity of the murderer or victim was not known).

The affidavit of probable cause upon which the search warrant to Google was issued was drafted by affiant Trooper Follmer, presented to the issuing authority on September 14, 2016, and reads in relevant part:

> Based off the assessment of the incident, it is believed that the Actor was very familiar with the VICTIM and the VICTIM was not randomly targeted. The VICTIM'S residence was also not randomly targeted. The VICTIM lives in a very small rural development outside the borough of Milton, PA and the whereabouts are likely unknown by most. Furthermore, it is believed that the Actor knew that the VICTIM'S husband was not home at the time of the entry into the residence. It is also believed that the Actor may have spent some time stalking the VICTIM and her husband's schedule as well as their whereabouts. Most sexual offenders of this magnitude are predominately fantasy driven, which could have occurred over a lengthy period of time. The VICTIM moved into the area in July 2015. It is believed that the Actor may have fantasized about the VICTIM, after seeing or becoming aware of her, and

it is likely that he followed her back to her address. Furthermore, it is believed that the Actor also researched the VICTIM'S address and/or VICTIM utilizing the internet or search engine similar to the searches provided by Google Inc.

Application for Search Warrant and Authorization, 9/14/16, at 3. Based upon this affidavit, Trooper Follmer requested a search warrant for, *inter alia*, search queries and image search queries of K.M.'s name or image, as well as searches relating to K.M.'s address, and the IP addresses associated therewith, between July 13, 2016 and July 20, 2016 (one week prior to the assault on K.M.).

In my view, there was a reasonable probability that K.M.'s attacker had researched her name and address prior to her abduction and rape. K.M.'s residence was remote, and she was attacked at a time when her husband was at work on an overnight shift, indicating that she was not randomly targeted, and that her assailant may have spent time tracking her and researching her husband's work schedule. Furthermore, police experience taught that, like many sexual offenders, the unknown rapist may have stalked and researched her as part of a planned crime before the assault. Moreover, given the ubiquitous use of the internet to conduct search queries and due to the widespread availability and use of Google's search engine, Trooper Follmer sought from Google the IP addresses of users who conducted searches for K.M.'s name or home address in the seven days prior to her attack.

The Superior Court concluded that the facts set forth in the affidavit – including the secluded location of the residence, that K.M. was dropped off in a location close to her home but also in an isolated area, that the attack happened at a time when she was sleeping at home alone, and police experience regarding the behavior of sexual predators – established a high probability that the sexual assault was not random or spur-of-the-moment. I agree. These circumstances reasonably led the police to conclude that the assault of K.M. was conducted only after advance planning, and that such planning was

particularly focused on the timing of, and locations where, the crimes took place. Utilizing common sense, I believe that it was reasonable to conclude, given the ubiquity of internet search engines and Google's services in particular, that the assailant would take advantage of Google's search engine for this planning.

Thus, viewing the affidavit with a common sense, nontechnical, and ungrudging eye, and considering the totality of circumstances set forth therein, I conclude that the affidavit demonstrates a "fair probability" that Google searches were conducted in the planning or committing of the rape of K.M. and that Google search information would provide evidence of the crime, thereby supporting the issuance of a search warrant.

Finally, I reject Appellant's contention that the warrant lacked specific facts or circumstances to support probable cause, and that Trooper Follmer failed to support his conclusion that a computer was part of the crime, as our Court has never suggested that the requisite probable cause needed to support a warrant requires direct evidence. Indeed, the inference that the attacker used Google was a reasonable one, and, in my view, a highly probable one. *See Jacoby*, 170 A.3d at 1083 (Pa. 2017) ("We are mindful that, in dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (alterations and internal quotation marks omitted)); *Commonwealth v. Green*, 265 A.3d 541, 551 (Pa. 2021) (offering that probable cause "is based on a probability, not a *prima facie* case of criminal activity" (citation omitted)).

In reviewing an affidavit for a warrant, the issuing authority must determine only that there is a "fair probability" that evidence relating to the crime will be found in the location to be searched. Importantly, the affiant does not have to eliminate all non-criminal possibilities or alternative innocent scenarios for a warrant to issue. At the time

of the issuance of the warrant the suspect was unknown, and there was no direct evidence that a Google search was used in the commission of the crime. Yet, that is not what is required for the issuance of a warrant. Certainty is not required when establishing that there is a fair probability that evidence of a crime will be discovered by a search.

Applying the appropriate standard as noted above, I agree with the lower courts that the facts contained in Trooper Follmer's affidavit – the secluded location of the victim's residence; that, after she was raped, the victim was left in a location close to her home but also in an isolated area; and that the attack happened at a time when she was sleeping at home alone – formed a sufficient basis for the issuing authority to conclude that there was a "fair probability" that evidence regarding the rape would be found in the Google database, with a targeted focus on Google searches for the victim conducted within a week of the rape.

For the above-stated reasons, I concur in the result reached by the OAJC and would affirm the order of the Superior Court, albeit on a different basis.

Justices Mundy and McCaffery join this concurring opinion.